HENRY RUCKER v. THE BOARD OF COUNTY COMMIS-
SIONERS OF COFFEY COUNTY.

**No. 197.**

EXTRADITION EXPENSES—*Money Advanced by County Attorney
—Liability of County.* Under the facts of this case, it is *held*,
that the plaintiff was not entitled to judgment against Coffey
county upon his claim for money alleged to have been paid by
him, while its county attorney, at the instance and request of its
board of commissioners, as part of the expenses of certain extra-
dition proceedings, as·it appears from the record that the defend-
ant board had already paid the claim of the state's agent for the
expenses of such extradition proceedings.

Error from Coffey district court; W. A. RANDOLPH,.
judge.   Opinion filed August 18, 1898.   Affirmed.

*J. D. McCleverty*, for plaintiff in error.

*E. J. Crego*, and *C. M. Christy*, for defendant in er-
ror.

The opinion of the court was delivered by

MILTON, J.: In this action Henry Rucker sought
to obtain judgment against the board of county com-
missioners of Coffey county in the sum of $977.90, for
money alleged to have been paid out by him for the
use and benefit of said county, at the special instance
and request of said board, in connection with certain
extradition proceedings whereby one J. W. Parker, a
fugitive from justice who had fled from that county,
was delivered by the authorities of the Dominion of
Canada to John P. Chess, the agent of the state of
Kansas.   Rucker was then county attorney of Coffey
county, and claimed to have so paid out and expended
in the aggregate, for counsel and court fees and other
necessary expenses in the extradition proceedings, the
sum of $1677.90, of which $700 had been repaid to

him by the board.  The plaintiff also alleged that the money was advanced by him in the reliance upon the repeated promises of the board to reimburse him as soon as Parker should have been extradited; and after being advised by the attorney-general of this state that such expenditure would be legal.  Various exhibits were attached to the petition, showing in detail each item of expenditure.

The answer contained an averment that the board had already paid the claim of the extradition agent in a sum exceeding $1300.  A demurrer to the petition was overruled, as was also an objection to the introduction of any evidence thereunder; but upon the trial the court excluded all the evidence offered by plaintiff tending to sustain his cause of action.  Various offers of evidence by the plaintiff were rejected, including an offer to prove that the state agent began an action against the board for the recovery of his expenses and compensation, and that the board had thereupon paid his claim; and an offer to prove that the plaintiff had presented to the board for allowance the claim here concerned, and that the board had taken no action thereon; also, that no part of the present claim had been paid to the state agent, or to any other person.  No offer was made to prove that the money was advanced upon the advice of the attorney-general.  It appears that the promises of the board to reimburse the plaintiff were orally made, and had not been entered in the journal of the board's proceedings.

From the record, it is evident that Parker sought by *habeas corpus* and other proceedings to prevent his extradition, and that very heavy expenses for court and counsel fees on the part of the demanding state were thereby occasioned; and it cannot be doubted

that the plaintiff supplied a large amount of funds directly to the Canadian attorneys, who were employed by him in the case on behalf of the state of Kansas. The petition indicates that the plaintiff understood that he was advancing the money in the discharge of his duty in the prosecution of the crime of which Parker stood charged, and in the expectation of reimbursement by the board of commissioners.

Whether the expenditure made for counsel and court fees in the present case are embraced within the scope of the "expenses" to be paid by the county where the offense was committed, under the provisions of section 315 of the criminal code, General Statutes of 1889, need not be determined. We think, however, that if the board of county commissioners can legally incur expenses of this kind, it must act directly through the agent of the state named in the extradition papers, and that such expenditure must be included in the total "expenses" of such agent. It appears also proper to hold that the agent alone is to be dealt with by the board of commissioners when the allowance is made for such expenses. The claim of Chess, the state agent, for the expenses of the extradition of Parker had been paid by the board of county commissioners before this action was commenced. By such payment Coffey county was presumptively discharged from its liability arising from the extradition proceedings. The plaintiff's petition and his offers of proof do not, in our opinion, furnish grounds for reopening a matter which apparently had been settled and disposed of by the parties immediately concerned therein. It may be further observed that the plaintiff is virtually seeking to recover money loaned to the board of commissioners. No authority on the part of the latter to borrow money from the county

attorney for any purpose has been pointed out or dis-
covered.   We are not convinced that the court erred
in directing judgment for the defendant for costs, and
the judgment will accordingly be affirmed.